IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIO PEÑA,

Petitioner, No. CIV S-01-1684 FCD JFM P

vs.

ANA RAMIREZ PALMER,

Respondent. FINDINGS AND RECOMMENDATIONS

_______________________________/

Petitioner is a former state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1997 conviction on charges of committing battery a spouse/cohabitor with great bodily injury. Petitioner claims that his constitutional rights were violated by prosecutorial misconduct, ineffective assistance of counsel, and a conflict of interest.[1]

FACTS[2]

> Consuelo Zapata was married to [petitioner] and he was the father of three of her children. Zapata divorced [petitioner] in

[1] This action is proceeding on the amended petition filed January 11, 2002.

[2] The facts are taken from the opinion of the California Court of Appeal for the Fifth Appellate District in People v. Peña, No. F028021 (July 26, 1999), a copy of which is attached as Exhibit D to Respondent's Answer, filed May 8, 2003.

> 1994. In May of 1996, Zapata and [petitioner] began seeing each other again. On May 31, 1996, [petitioner] went to Zapata's home to ask her to let him move in with the family. Zapata rejected the offer; she told [petitioner] she just wanted "to be friends and just date each other."
>
> [Petitioner] became upset. He told Zapata, "Before I leave, I have one thing to do." With a steel-toed shoe [petitioner] then kicked Zapata "really hard" in the buttock. [Petitioner] tried to kick Zapata in the stomach but she blocked the blow with her right hand; the blow to her hand dislocated her finger.
>
> After pushing Zapata against a fence, [petitioner] pulled a folding knife from his pocket. As [petitioner] opened the knife, Zapata grabbed it and threw it over the fence. Zapata tried to escape but [petitioner] threw her to the ground. He began kicking her in the torso, arm, face, and head.[3] Zapata lost consciousness.
>
> When Zapata regained consciousness, [petitioner] was crying and embracing her. He told her, "We've got to get back together for the sake of the children." Zapata again refused. [Petitioner] grabbed her by the hair and held her head against the top of a metal fence. A police officer, Jason Stewart, arrived and ordered [petitioner] to release Zapata. He did.
>
> Stewart called for an ambulance for Zapata and arrested [petitioner]. At the police station, Stewart admonished [petitioner] pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. [Petitioner] told Stewart that Zapata attacked him and he pushed her away. He

/////

---

[3] A neighbor, Kelly Sturges, was watching the assault through a window as she talked to the 911 emergency operator. A transcript of the recording of the telephone conversation was admitted into evidence when Sturges testified at trial. In relevant part, the transcript states:

> "[Sturges]: He's beatin' the shit out of her!
>
> "911: We're on our way.
>
> "[Sturges]: Oh, my God, she's like lying on the ground. He's kicking her.
>
> "911: We're on our way.
>
> "[Sturges]: He's kicking her in the head!
>
> "911: We're on our way. OK?
>
> "[Sturges]: OK."

> said he did not hit Zapata; he said she had the knife and he never had possession of it.

(People v. Peña, slip op. at 2-3.)

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is “contrary to” clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the “unreasonable application” clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court’s decisions, but unreasonably applies that principle to the facts of the prisoner’s case. Williams, 529 U.S. at 413. A federal habeas court “may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.” Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

/////

123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

A. Prosecutorial Misconduct

Petitioner's first claim for relief is that the prosecutor committed misconduct by showing a slide backwards, thereby giving the impression that the victim had sustained injury to her left upper lip when in fact she had not. This claim was rejected by the Stanislaus Superior Court on a petition for writ of habeas corpus on the ground that the court did not find evidence of prosecutorial misconduct, (Respondent's Ex. N), and summarily denied by the California Court of Appeal for the Fifth Appellate District and the California Supreme Court. (Respondent's Exs. K, L, O and P.)

At trial, the prosecution offered into evidence People's Number 14, a slide showing injuries to the victim's face. (Reporter's Transcript of Proceedings (RT), at 57.) The victim testified that the slide showed the appearance of her face after the beating. (Id. at 58.) Subsequently, the defense called as a witness Dr. Jose Rodriguez. During cross-examination, the prosecutor showed Dr. Rodriguez People's 14 and asked if he had an independent recollection of the victim's face after the beating. (Id. at 242-243.) Dr. Rodriguez testified that the victim's face had been swollen on the right side, while the exhibit showed swelling on the left side of her face, at which point the prosecutor noted that the slide was "probably backwards." (Id. at 243.) At the court's direction, the slide was turned around. (Id.)

/////

Success on a claim of prosecutorial misconduct requires a showing that the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990). Generally, if an error of constitutional magnitude is determined, a harmless error analysis ensues. Error is considered harmless if the court, after reviewing the entire trial record, decides that the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). Error is deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's substantial rights." Kotteakos v. United States, 328 U.S. 750, 760-761 (1946).

The error in showing People's 14 backwards did not rise to the level of prosecutorial misconduct. After the error was noticed by petitioner's witness, Dr. Rodriguez, the prosecutor apologized and promptly replaced the slide in the correct position. Given the immediate correction, as well as the extent of the victim's injuries, there is no possibility that the misplacement of the slide had any improper effect on the jury's verdict. Petitioner's first claim for relief should be denied.

B. Ineffective Assistance of Counsel

Petitioner's second claim for relief is that he received constitutionally ineffective assistance of counsel in connection with testimony concerning where the knife was found. Specifically, petitioner contends that his defense counsel failed to object to or otherwise take steps to discredit the victim's testimony that she threw the knife over the fence into the street and that counsel allowed petitioner to perjure himself in his testimony about the knife. This claim was rejected by the Stanislaus Superior Court on a petition for writ of habeas corpus on the ground that the court did not find evidence of prosecutorial misconduct, (Respondent's Ex. N),

/////

and summarily denied by the California Court of Appeal for the Fifth Appellate District. (Respondent's Exs. O and P.)[4]

Petitioner's third claim for relief, though styled "Conflict of Interest," is also a claim that his counsel was ineffective in (1) failing to object to exhibits offered by the prosecution; (2) failing to offer a photo exhibit of the left profile of petitioner's face to corroborate petitioner's testimony concerning the extent of his injuries from the fight with the victim; (3) failing to recall any prosecution witnesses after People's 14 was found to be backwards; (4) failing to move for a mistrial; and (5) failing to inform petitioner that several jurors had seen his mother, who testified at trial, sitting with petitioner's brother and cousin, who appeared to be gang members, and had complained to the prosecutor about the appearance of petitioner's brother and cousin.[5] This claim was summarily denied by the California Court of Appeal for the Fifth Appellate District. (Respondent's Exs. O and P.) At least part of the claim was also summarily denied by the California Supreme Court. (Respondent's Exs. K and L.)[6]

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show two things, an unreasonable error and prejudice flowing from that error. First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 688 (1984). The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690. "Review of counsel's

---

[4] Respondent asserts that the claim was also summarily rejected by the California Supreme Court, citing to her Exhibits K and L. The court has reviewed respondent's Exhibit K and does not find the present ineffective assistance of counsel claim contained therein. Even if the claim was not presented to the California Supreme Court, however, it may be denied on the merits. See 28 U.S.C. § 2254(b)(2).

[5] Petitioner speculates that the jurors might have drawn the conclusion that he was gang-affiliated

[6] Unexhausted aspects of the claim may be denied on the merits. See 28 U.S.C. § 2254(b)(2).

performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

Second, petitioner must prove prejudice. Strickland at 693. To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

With respect to petitioner's first contention, the record reflects that Officer Stewart testified for the prosecution that he had found a knife inside the yard where the victim was attacked. (RT at 187.) The victim testified that she had taken the knife from petitioner and thrown it. (Id. at 121-22.) Defense counsel cross-examined the victim concerning discrepancies between her trial testimony and testimony she had given at the preliminary hearing about what she had done with the knife. (Id. at 121-123.) Petitioner later testified in his defense that the victim had "grabbed the knife from [his] hand" and thrown it over the fence. (Id. at 211.)

Petitioner's claim that his counsel was ineffective in failing to take adequate steps to discredit the victim based on discrepancies in her testimony about what happened to the knife, and in allowing petitioner to testify that the victim had thrown the knife over the fence, is without merit. The alleged acts and omissions did not fall outside the bounds of reasonably competent professional assistance, nor has petitioner shown any prejudice therefrom. Petitioner's second claim for relief should be denied.

With respect to petitioner's remaining claims of ineffective assistance of counsel, this court finds that petitioner has failed to show any reasonable probability that the outcome of his trial would have been different had counsel objected to the prosecutor's exhibits, offered

corroborating photographs of petitioner's injuries, recalled any government witnesses or moved for a mistrial after People's 14 was found to be backwards, or taken any steps based on the alleged juror complaints concerning the appearance of petitioner's brother and cousin. The evidence that petitioner caused great bodily injury to his ex-wife during the altercation was overwhelming and petitioner has not shown that the outcome of his trial would have been different had counsel's performance been different in connection with any of the circumstances cited by petitioner. Petitioner's third claim for relief should be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 31, 2005.

UNITED STATES MAGISTRATE JUDGE

12
pena1684.157